STATE v. GREEN HORTON.

§ 415 *of The Code—Special Instructions—Chap.* 248, *L.* '85,.
*Seduction—Evidence; exhibiting child to jury—Jury; province of.*

1. Under § 415 of *The Code* the Judge may disregard oral prayers for special instructions.

2. On an indictment under Chap. 248, Laws of '85, for seduction under promise of marriage, it being proven that prosecutrix had a child which resembled defendant; that defendant had admitted a promise of marriage, but said in his admission that he only did it for "devilment," and that prosecutrix's character for virtue was good, there was no error in the refusal of the Court to charge that there · was no evidence to support the charge contained in the indictment.

3. It is not error to permit a child to be exhibited to the jury, that they may trace a resemblance to one charged with having begotten it. And such evidence is admissible on an indictment for seduction,. as it tends to prove the fact of sexual intercourse between prosecutrix and defendant.

4. The defendant asked a special instruction, beginning: "If the jury believe the testimony of S W," &c. The Judge gave the instruction thus: "If the jury believe *from* the testimony of S W," &c.; *Held,* that it was proper to insert the word "from," because it is the province of the jury to interpret and determine what is proved by a witness.

5. The statute, Chap. 248, Laws of '85, contemplates a seduction by means of a promise of marriage in the nature of a deceit. Consent is no defence, if seduction is proven. Sexual intercourse procured by *force* is not within the statute.

Indictment for SEDUCTION under promise of marriage, under Acts of 1885, ch. 248, tried before *Clark, J.,* at November Term, 1887, of ROWAN Superior Court.

Verdict of guilty; appeal by defendant.

The facts are stated in the opinion.

*Attorney General* and *Mr. Theo. F. Klutz*, for the State.
*Messrs. R. F. Armfield* and *L. S. Overman*, for the defendant.

SMITH, C. J.   The defendant is charged with violating the
Act of March 6, 1885, (ch. 248,) which is in these words:

"That any man who shall seduce an innocent and virtu-
ous woman, under promise of marriage, shall be guilty of a
crime, and upon conviction thereof, shall be fined or impris-
oned at the discretion of the Court, and may be imprisoned
in the penitentiary not exceeding the term of five years:
*Provided, however*, that the unsupported testimony of the
woman shall not be sufficient to convict: *Provided further*,
that marriage between the parties shall be a bar to further
prosecution under this act."

The indictment, pursuing substantially the terms of the
enactment, charges that the defendant, at the time and place
mentioned, " did, unlawfully, willfully and feloniously, seduce
one J. S. Wilkerson, an innocent and virtuous woman, under
the promise of marriage, against," &c., and the accused being
tried upon his plea of not guilty, was convicted by the jury.
The testimony before the jury was to this effect:

The prosecutrix testified that she was twenty-eight years
of age, and was living with her father, as she had lived with
him during her whole life, except when she was with a mar-
ried sister, Mrs. Barnhardt, taking care of her small children,
during which interval, about two years since September last,
she first met and formed the defendant's acquaintance; that
in about two weeks afterwards she met him again, and at
his first visit to her an engagement to marry was entered
into, to-wit: on February 24th, and the marriage was to come
in the spring following; that witness was to go to the house of
Goodman, another married sister, and thence with the
defendant proceed to Statesville and be married, and that
she carried her clothes to the place in order to carry the
agreement into effect, but defendant failed to come; that in

January or February, 1887, after the arrangement, she first submitted to his embraces, and they had sexual connection; that this was accomplished in a room at night, no one else there, though her parents were in an adjoining room, while witness was sitting in a chair, and he, at the time, saying there was no harm in it, as they were engaged.

On cross-examination, she stated that the defendant was upon his knees, with one hand over her mouth and the other around her person; that it occurred twice in the same way, and in each case against her will, and she was told by him to keep it a secret; that a child was born, the result of their intercourse, about the 1st of October, and he was the father, as she had "never had anything to do with any other man at any time in her life;" that his visits to her were about every two weeks for some two months, and afterwards he came to her father's house for several weeks.

The corroborative evidence offered by the State was, in general terms, as follows:.

The Justice of the Peace, who issued the warrant, detailed a similar statement of facts made to him as to the marriage agreement—the time when made and to be performed, and the time and manner of the seduction.

The additional supporting evidence under the statutory requirements was this:.

John S. Wilkerson, the father of the prosecutrix, swore that the defendant came to his yard on the first Sunday in May, at sun-down; would not come into the house, but called witness out as he said he wished to have some private talk with him; said he had heard that I was mad with him, and witness answered: "Horton, you know what is the matter; Sarah has caught cold, or is in the family way." Defendant replied, he knew what would relieve her; that he had learned it from a young doctor, and witness need not tell any one. He then gave the prescription, and "admitted having

promised to marry Sarah, but said he did it out of devil-ment, as many other young men."

The prosecutrix was supported in her testimony about going to the house by the latter, and her purpose in doing so.

The child was then exhibited to the jury by Mrs. Yost, who testified to her knowing the defendant, and the resemblance it bore to him.

To the introduction of the child before the jury, defendant's counsel objected; but the objection was overruled, the Court telling the jury that the resemblance was not evidence of a promise of marriage and seduction following it, but was merely corroborative of the fact of sexual connection between the parties, and thus only to be considered by them.

The defendant, examined on his own behalf, denied that he had ever promised to marry the prosecutrix, or had sexual intercourse with her; * * * admitted being at her father's house at the time stated by her, and remaining in the room after the father had gone to bed, the door not being shut; his visit to the latter in May, but he did not say he had agreed to marry his daughter.

The general character of the prosecutrix was admitted by the defendant to be good.

Defendant's counsel verbally asked a ruling that there was no evidence to go to the jury in support of the charge contained in the indictment. Under the rules of practice this request was disregarded.

Written instructions were then asked, as follows:

If the jury believe the testimony of Sarah Wilkerson, that the defendant accomplished his purpose upon her person by force, he having one hand upon her mouth to keep her from crying out, and the other around her body while sitting in the chair and all the time resisting, and she never consenting to the intercourse, defendant is not guilty.

The instruction was given with a single change in the insertion of the word "from" between the words "believe"

and "the testimony," in the first line, and this addition: " If the defendant committed a rape he cannot be guilty of seduction; but you are the judges of the testimony, and will give just such weight to each part as you think it deserves, and upon the whole evidence, say how the truth of the matter is. If she was seduced, or made only a slight resistance and then consented, relying on defendant's promise of marriage, and was an innocent woman, the defendant would be guilty. If there was no sexual intercourse, or if it was brought about by force, or she was not an innocent woman, in either of the cases he would not be guilty. The burden of proof is on the State to satisfy the jury beyond a reasonable doubt: 1st, that the defendant procured the carnal intercourse; 2d, that he did so under a promise of marriage, and 3d, that she was an innocent woman.

By the words an innocent woman, the law means a woman who has never had previous illicit intercourse with any man.

If the jury are satisfied of these three facts, beyond a reasonable doubt, they will find a verdict of guilty ; if not so satisfied beyond a reasonable doubt as to any one of them the verdict should be an acquittal."

The jury were the sole judges of the evidence, and the credit to be given to it, the Court having no right to intimate any opinion as to the fact. The defendant was convicted, and after the denial of the motion for a new trial upon the errors assigned, and noted in the record and judgment pronounced on the verdict, the defendant appealed.

This somewhat extended rehearsal of the evidence and of the charge is deemed necessary to an intelligent presentation of the alleged errors upon which we are requested to pass.

1. The refusal to give the unwritten charge. It is expressly provided in *The Code*, § 15, that instructions requested shall be put in writing and signed, and if not, "the Judge may disregard them." This was the course pursued, and the counsel had opportunity to put the propose charge

in writing, and remove this impediment out of the way. But if it be supposed that the statute applies not to criminal but to civil suits only, there is no error in the refusal to give the instructions demanded.

There was evidence, not only that coming from the prosecutrix only, but from other sources, in support of hers, and that in all of the essential particulars constituting the offence defined in the act. The birth of the babe proved the intercourse with some one, and its features and general appearance point to its paternity.

The defendant admitted his promise to make her his wife, and his denomination of his conduct as a piece of "devilment," such as many young men practice, is an implication, at least, that he had effected his purpose by means of the promise.

The virtuous character and conduct of the prosecutrix was proved and conceded, so the testimony of the injured was not "*unsupported*," but derived confirmation from that of others, as the statute prescribes.

2. The second exception is to the exhibition of the person of the child for the jury to see, and trace any likeness it bore to the defendant.

This precise objection was made to the Court's telling the jury "that they could take into consideration the appearance of the child, and give it whatever weight it thought it entitled to," in *State* v. *Woodruff*, 67 N. C., 89, and this Court declared that there was no error in this part of the charge. This was said in a bastardy proceeding upon a question of paternity, and upon the same issue the child was introduced in this case.

3. The last exception is to the modification of the instruction given at the instance of the accused, and in one view is entirely groundless. It is the province of the jury to interpret and say what is proved by the witnesses, and this is the

result of the interpolation of the preposition "from," nor was the law incorrectly laid down in what follows:

The statute plainly contemplates a seduction, brought about by means of a promise of marriage, in the nature of a deceit. The testimony fully warrants this inference, for the defendant induces assent by what he said about their contract relations, and his statement to the father, that this was resorted to to overcome her reluctance as a chaste and upright maiden. 2 Whar. Cr. Law, §§ 2073 and 2678 a. Consent too, if seduction be proved, is no defence, nor that natural unwillingness a virtuous woman feels against such self-abasement of which he speaks, when, in fact, it at last yields to the importunity of one expected soon to be a husband.

The Court satisfactorily presented the case to the jury in this aspect of it, and no just grounds of complaint are furnished to the accused.

There is no error, and the judgment is affirmed.